Good morning, Your Honor. May it please the Court. My name is Corey Langhoffer, and together with Tom Basile and Roy Herrera, we represent the Public Integrity Alliance and the individual voters who are plaintiffs and appellants in the case. Two constitutional axioms control the disposition of this case. The first is in Gray v. Sanders, of course, which says it's unconstitutional, it's a violation of one man, one vote, to, in a primary election, dilute the vote of a resident of the geographic unit, based on his or her home site within the unit. The second constitutional axiom... Sorry, this is a... I thought you no longer had the dilution claim. That's correct, Your Honor, which leads me to the second... You just told me you're after a constitutional principle that has no applicability to this issue? No, Your Honor. The second axiom is that... That was a drive-by. Where dilution is prohibited, denial must also be prohibited. Let's talk about that. As I understand it, these are partisan elections, right? That's correct. So not every voter in the ward gets to vote for all of the candidates that are on the ballot. You have to either be an R or a D, right? That's correct. In Arizona, independents, or people who belong to parties that are not recognized, can also vote in a primary election. And they do that by, what, a petition? They get enough signatures on a petition to get on the ballot? No, when... Or can they cross over, I guess? They can cross over. I see. Okay. So in that respect, not everybody in the ward gets to vote on all of the candidates, do they? It is not possible for anyone to vote on all of the candidates, because you need to choose a primary in which to vote. Right. It's a means by which the parties choose their standard bearers to then stand in the general election where everybody in the city gets to vote. That's correct. Just like, as was the case in Gray. Yeah. Well, what happens, you know, it's a recognized party, but what happens if there's, say, the Jackrabbit Party? Can they get recognized and be on the ballot? The Jackrabbit Party or the Green Party, for example, could petition for recognition and access the ballot. If it fails to do that, its members then get to choose between which of the recognized parties they want to vote in the primary for. So if you show up on election day, the question will be, which party's primary do you want to vote for, Republicans or Democrats? And everyone gets to choose. The only people who would be disqualified from voting in a primary would be someone who's registered to vote, or, excuse me, a registered member of a different recognized party. So, for example, anyone but Republicans can vote in the Democrat primary, and anyone but Republicans, excuse me, anyone but Democrats can vote in Republicans' primary, because the other parties aren't recognized. But if the Jackrabbit Party got recognized, then you'd have three choices? That's correct. And only people that are members of the Jackrabbit Party then could vote for the Jackrabbit Party primary? No. Independents could vote in the Jackrabbit Primary, or Green Party members, for example, could vote in the Jackrabbit Primary. Anybody not recognized for one of the other parties can vote. That's correct, Your Honor. But only from the county. I'm sorry, from the ward. Only from the particular ward. That's correct. You'd have to reside in the ward and not be a member of a different recognized party in order to vote in the primary. Let me ask you, what turns, or how much turns on the fact that the parties seem to agree that once elected, the council, councilmen, right, represent the entire city rather than the ward? How much turns on that? The case turns on that. That fact moots count two. Count two is, of course, the argument that by letting other wards vote in the general election, you were diluting, let's say, ward one voters' influence in the general election. But once we agree, the city councilmen don't represent ward one or ward two, etc. They represent the entire city. The dilution argument What does it mean to represent the entire city, and how do we know that's the case? I know the parties agree on this, but I don't quite get it. So our view is that the geographic unit for the general election establishes the constituency that can vote for the representative and is entitled to representation by the city councilmember. Of course, we see that in congressional elections. We see that in gubernatorial elections. We don't see that in judicial elections, of course. Judges aren't representative at all. They're there to declare the law. But where we have representative elections, the constituents are the people who live in the unit that gets to vote in the general election. We cannot disentangle the primary election from the general election. It's not fair to say, oh, we have a different geographic unit for the primary. There's three Supreme Court cases I think we need to look at to establish that principle. The first is the U.S. v. Classic. In that case, the Court rejected the idea that you could separate the two. It said the nomination process is inextricably tied up with the actual election process. We can't treat it as a whole. Well, that's true in the general sense that it is the means by which the standard bearers are selected. But it doesn't necessarily follow that the same voters have to have the same right to vote. And you just admitted in response to my earlier questions that they don't. Not every voter in the ward gets to vote for everybody who stands in the primary election. We think the principle is that, is this. You look at who is elected in the general election, right, when you actually pick someone to serve in elected office. The people who are, the geographic unit that gets to vote for that representative, the people within that all must have, over the course of the election cycle, the same opportunity to, the same weighting, right? But they don't. I mean, the problem I'm having with your argument is, if that were true, then everybody in the ward should be allowed to vote for everybody who's on the ballot and everybody in the primary and everybody in the ward should be able to vote for everybody on the ballot in the general. Isn't that your argument? So our argument, to the extent I, as a registered Republican, for example, couldn't vote, I don't live in the city of Tucson, but couldn't vote in the Democratic primary. I've chosen to be a member of my party. I've chosen this association. In the general, you can vote for the Democrat from Ward 3 if you want to. That's correct, I could. But you can't in the primary. That's correct. Right. But you like the primary system. You don't want to end that, do you? No. Our argument is not that primaries are unconstitutional. That argument would obviously not work. And hasn't this question been presented to all of the voters of the city of Tucson? I years back, the change, the procedure by which council members were elected and the voters said, no, we like the system we have. There have been several times in Tucson's history since this charter provision was adopted when a similar issue was put on the ballot. The issue that was put on the ballot was not what was discussed at the trial level of the court ordering the city to put on the ballot. What was discussed at the trial level was the current system is unconstitutional. Do we want, going forward, to have ward-only elections or at-large elections? You must choose one of them. You can't have the hybrid system. What has been historically put to the voters is, would you like to change? You can answer that in the no. And they have, at least at one point, been given the option of changing to at-large. At one point, I think many years earlier, they had the option of changing to all ward-only, and both of those failed. Why should federal judges tell the city of Tucson how they select their councilmen? The system in Gray v. Sanders was also approved by duly elected representatives. The system in, you know, pick a case, a one-man, one-vote case. All of those rules were adopted by duly elected members of state representatives, who are, of course, presumptively representative of the public. The fact that the city has chosen the system doesn't mean this court is divested of jurisdiction to consider. It isn't a question of being divested of jurisdiction. It's a question of the appropriate role of the judiciary in, I mean, this cuts to the fundamental heart of a democracy, the way that the citizens decide how they shall choose the people who will represent them in the city legislature. The problem is if we do it, we tell them there's only one way you can do it, and you can't change it. The votes that were held previously, I think I've made my argument. I won't repeat the idea that it doesn't correct or counsel this court should not address a federal constitutional violation, but let me not repeat myself on that. I want to make a different argument. One-man, one-vote is about minority protection. Of course, we would expect that where the system in place keeps political minorities, minority political parties that may have a majority in particular districts, but are a minority citywide, where the system that's currently in place disadvantages them, we would, of course, expect that when you put to the entire electorate the question of do you want to change, the majority would say, no, we're perfectly happy, sort of, you know, minimizing the influence of these political minorities. I don't think we can look at — Well, let's talk — there are six precincts or wards, that is, in Tucson, and my suspicion is from having sat in Tucson from time to time, there are probably two that have a Republican plurality and there are probably four that have a Democrat plurality. Am I right? You're correct, Your Honor. Okay. Although that's not in the record, but it's correct. All right. Well, I'm just surmising. And then, so what happens is you get in the general election and the Democratic overall plurality then controls. That's what happens, right? That's correct. But then if you take that and go over to minorities, you've got not maybe in Tucson, but looking elsewhere, you've got situations where I suppose that Latinos, even if they're 66 percent of a particular city, might not ever elect anybody. That could be another result of this same setup, couldn't it? If they're 66 percent of one city, would not elect anybody? Well, no. If you had this situation where you had wards and elections at large, even if you had a high percentage of Latinos, you might have a situation where they're not getting elected. It is conceivable. The Voter Protection Act, the Federal Voter Protection Act, of course, would limit redistricting in ways that's intended to keep a majority, 66 percent, under your hypothetical, from duly influencing the composition of the city council. I think as a practical matter, given the current composition of city council and the redistricting process, I think there's just an infinitesimally small chance of that actually being realized. It's much more likely that they keep the current districts and Republicans would continue to be a minority on the city council. But importantly, someone, Mr. Smalley, for example, one of the plaintiffs, we know by stipulation that three people will be elected to city council this year who will represent him. And we also know he will be categorically prohibited from participating in the primary election process, the nomination of two people who may end up representing him. How can we reconcile that with the principles of one man, one vote? Under the city's theory, the mistake the government made in Gray was giving at least some influence to the outlying counties. What they should have done. I'm sorry, I didn't understand that last point you made. Doesn't a voter in the general election have the right to cast three votes? Yes, there is essentially three separate elections in the general. You get to choose one person from War One, one from War Two. So every voter gets to choose one from each ward. That's correct, Your Honor. From among a list of candidates as to which most of the voters have not had a choice, have not had a chance to participate in selecting, right? That's correct, Your Honor. And there are instances. Now, is there, I mean, what if you had a nominating convention? There were no primary at all. I mean, there's no requirement that you, if you're voting in the general election, you have participated in the nominating process, is there? No, Your Honor, there is not. But the case law does say that once you decide to hold an election, the one man, one vote principles apply. The fact that they could get rid of the election altogether, they could have conceivably an appointment. So, so the really the question that divides you and the city is whether we treat the two elections as one unit or that we treat them as separate events. And the city says they're separate events. One is the nominating process, which could be a convention, could be something else. And the other one is the the actual election. Why isn't that model as good as your model or better? So first, there's the U.S. classic decision that says you cannot untangle the two. Once you have a primary election, as opposed to nominating convention, you can't say, well, that's really a separate process. The nomination is very much tied up with the general election. The second is Gray, where Gray says, of course, once the geographic unit is set, you can't discriminate based on home site within that geographic unit. If we're to accept the city's proposition that you can designate a separate geographic unit for the primary, it's very difficult to give independent force to that concept in Gray. Couldn't couldn't they in Gray just have said, well, one county gets to vote this time around and next, maybe next time we'll have someone else do the do the nomination? Well, let's say they said we'll let the voters of Phoenix decide who are going to be the. Dominees for the general election in Tucson. So none of the people in Tucson get to vote. That's not the Phoenix. They reciprocate. They also do the vice versa. But let's just say that's what it is. So that is actually, for our purposes legally, indistinguishable from the way the residents in Ward 2 feel about the primary in Ward 1. It's not them, right? That's their representative. They get no say in who that their own representative is. Legally, I think the analysis is the same. Of course, that's. So convention is okay. That's correct, Your Honor. No matter, even if you have like a statewide convention or anything of that sort. So if it were a statewide convention, count two would be reanimated. We would have then a dilution theory that is really no longer on the table here. It's this turn, really count one denial and count three, which is the state counterpart of count one, are what remain on the table. Because a statewide would include Tucson, but it also includes a lot of other people that shouldn't. That's correct. So that would be a dilution claim. That's correct. Now, whereas the Phoenix example excludes Tucson, excludes the people who actually vote in the general election. That's correct, Your Honor. Now, there are historical examples. In the record, I think we've agreed to about 25% of the elections in recent history. In the general election, you can see that the preference of a ward is overruled by the preferences of the city overall. This, as Judge Pearsall observes, is probably the consequence of majority minority districts, politically speaking, not racially speaking. It's impossible to say how many times the nomination preferences in the primary are inconsistent with what the city as a whole would say. Because we just don't have the data, right? They've never held that election. Our position is the geographic unit for the general election must remain constant throughout it. I started to say a couple of times earlier, the three cases that show us we can't separate the geographic unit in the primary from the general. I've said classic. I've said gray. The third case that we need to look at is Evans versus Kornman. At Evans, they have a line that says, you can't dilute to advance other interests. And it says, in summary fashion, of course, if dilution is not permissible, neither is denial. We couldn't have a more lenient standard for dilution than we have for denial. It cites the Kramer versus Union. Kramer has the same summary statement. Of course, if dilution is not permissible, neither is denial. This is self-evident. If Gray versus Sanders, which was a vote dilution in the primary based on home site, was impermissible, it can't be true that they can redesignate the vote to five-sixths of the city whose nominee is being chosen. I'm happy to continue answering questions, but I'd like to have... With regard to remedy, if this court were to overrule, then it's sent back for determination by others as to what the new method of election would be, right? We have, of course, briefed the idea of remedy. In preparing for argument, we've sort of come around to the idea that remedy is very complicated. And I think it would be cleanest if, rather than trying to address it in an expedited fashion here at the podium, it's remanded. I think there are real issues that go along with remedy. Do we do anything about the elections in 2015? If we're doing something for wards one, two, and four in 2015, do we need to have a special election about the other wards to make sure that everyone has the same number of representatives on the council? Well, you're about to have the primary this month, aren't you? Has it already occurred? The early voting has already started. It's too late to fix the primary at this point. Is voting by mail or in person? Statewide, there's about 70% of the votes that are cast by mail. And most of the early votes... How do you do it in Tucson, is what I'm asking. I don't know the statistics in Tucson, but it is by mail. I know statewide, most of the voting is by mail, and most of the mail voting is in the first week or so. The ship has sailed, I think, for the primary, and I think it would just be too disruptive to try to undo the election that's already ongoing. On remand, what we would ask for, and what we've talked about with the trial court before, would to have something on the ballot in 2015 for the general election about what the system should look like going forward. The wording of that is important. I think the city council would want to look at that closely. Does the city have a proposition or a referendum process by which that can be done? It does. You could pay to gather signatures and have, by initiative, a charter amendment. Our position on remedy at this point is that we should address that on remand. I think it's complicated and hasn't been fully briefed to this court. The Justice Department is not participating in any way in this case, right? It is not. They received notice. There's, in the record, they received notice of constitutional issue. And they just chose not to. Is there any point in asking them to express a view? I don't think there's a... Did this used to be a Section 5 jurisdiction? It did. All of Arizona was, and Arizona was one of the cases... I mean, much of Arizona was, all of Arizona was. All of Arizona was, yeah. It was one of the states that the majority, I think, cited as sort of an example of why preclearance had gone too far. But Arizona was, in fact, a preclearance state, all of it. But you're not making an allegation here that there's any impermissible discrimination on grounds of race or anything of that nature? We are not, Your Honor. The charter provision was adopted in the 1920s. And to the extent there were any facts, you know, invidious discrimination, then it would, it's probably not even applicable today because the circumstances have changed so much over 80 years. And, in fact, don't you have two out of the four seats are currently occupied by Hispanics? I think it's a majority. The number... More than three? It is, minority representation is not a problem. Not an issue. Okay. Thank you. Okay. Thank you. You don't say it's not a problem. It's not an issue. Minority representation is a problem in the country. It is not an issue in this case. Good catch. May it please the court. Good morning, Your Honors. Dennis McLaughlin for the City Attorney's Office in Tucson for the city, which is asking for affirmance in this case. I'd like to address three specific points that were asked about and I hope to clarify. Tucson does use vote by mail and vote by mail ballots are out both for the general citizenry and also overseas and military ballots. The process starts, I believe, 27 days before and our election is the 28th, I believe. So that is an ongoing process and I'll be glad to answer any, clarify that in any way you need me to. Judge Kaczynski asked about our council. We consider it a unitary council under Article III, Section 1, because the government of the city is vested in a mayor and council of one mayor and six council members who represent the entire city. Now, they are nominated by ward and then they're elected. They represent the entire city. I was trying to nail down, and the parties agree on that, but I thought it was less clear than all that. What is it that supports the proposition that they represent the entire city? Basically, Your Honor, that they're elected by all voters. It's tautological, basically. They represent the entire city because they are elected. A little, a little bit. But here's the issue. If you are a city councilman and you come from Ward 1, let's say, I mean, I don't know what the words are. I'm just picking a ward at random. You're nominated in that ward. I'm sorry? You're nominated in that ward. Right. Right. The chances are very good. And if you get something that's contested, that you're going to listen to the voters in that ward a lot more closely than, and particularly, you're going to listen to the voters in that ward that are from your party, even if that party is a minority in your ward, right? That is- Because if you, at the next election, if you can't get past the nominating process, when you're running against somebody else in your own party, then you're not going to be there, right? Right. And whereas if you get past the nominating process, if I understand the politics of Tucson correctly, is if you're a Democrat, you're going to get elected. If you're a Republican, you're going to not get elected because you're running against somebody of the opposite party. Depending on the ward. So doesn't that, doesn't that suggest that, that, that the, you know, you're representing, you know, accepting the proposition of representing the city at large, some voters get a lot more pro than other voters, just because of the structure of the system. You are going to make sure not to tick off people in your ward that are in your party. I mean, because that's the death knell. If you, if you, if you tick them off, you are, you are going to not get nominated again. There's certainly a mix there. You know, chances are you, you make life very difficult for yourself. You're going to have to walk a bit of a tightrope in that you're going to have to please your party to get nominated. It's a tightrope that's sort of tilted. It's not, it's not sort of a straight tightrope. It's a tightrope where you have to sort of lean heavily towards this group of voters that, and specifically they are the voters in your party from your ward. Yes. And even though they may be a minority in your ward, so there may be lots of people in the majority in your ward supporting you, but they're in the other party, you're not going to care about that. You're going to care a lot less about the voters in the city at large from other wards, but you're going to pay real close attention to the people in, in, in your ward from your party. And the one modification I would make to, to your, it's a little hard to, I'm sorry. The one modification I would make to your logic, Your Honor, is if, if you, if you assume what the, my opponent wants, you're going to have to be responsive to voters in your party citywide. It's a matter of which group of party voters. Not so much because once you get past the nominating process, you're no longer running against somebody in your party. The city voters don't get a choice between you. I mean, let's just call it you and another Democrat. At that point, you're facing a Republican and the majority in the city is Democratic, so they're not going to likely vote for the Republican on this one issue. Whereas in your own ward, you are running against, you'd be running against another, let's say Democrat, right? Right. And so they have a choice between two Democrats and, and, and if they're really ticked at you, they, they could not renominate you. That's true. And they could do it pretty safe that by not renominating you, they still get representation in the council because conditionally the, the, the city at large votes, always votes Democratic, right? There, there is certainly that possibility. Doesn't this suggest that, that, you know, sort of, uh, uh, that, that basically some voters in the city, because of this two-tier process, get a lot more, isn't this sort of the heart of one man, one vote, the idea that some people get a vote that counts for a lot more than everybody else? I don't think under Lopez Torres, for example, that it, that it is, um, Lopez Torres and the Mrazek case in the second circuit, um, they said, we're not talking about allocations of political power, what's fairest, what's best. One person, one vote is about, you draw a box for an election and let's take legislative elections specifically. And in every election that you have, and we say there's two separate elections, just as Judge Tolman said, every voter has to have an equal opportunity to vote and their vote has to be equally weighted. And that's. But, but you, if you are sort of, if you're a voter from Ward two, uh, and, you know, you are anxiously watching the election of who's going to be nominated for Ward one, because that person is going to be representing you once, you don't have any say at all on that. Yeah. The Ward one election goes on and you have no vote on it at all. And if they nominate a schmuck, as far as you're concerned. And that's. No choice, but to, uh, right? That's Holt. Holt says in city of Tuscaloosa, you're outside the city, you're affected by the city. You, you're subject to their police regulations. You still don't get to vote in their election. And they're in this, the opponents are in the same position, except that they're outside of the particular Ward. Quite, quite different. I mean, there, they were not, I mean, they were affected by the laws in some way, but they were not, these were not their constituents. I mean, they were outside the city. They were somehow affected by the, by the, uh, by some aspects of the law. And our plaintiffs are outside the Ward. But here you conceded that they actually represent everybody in the city. Yes. But that was not the case in Tuscaloosa, right? Tuscaloosa, they weren't, they were not allowed to vote on people in a, in a city they were not resident in. And they were not representing, they were not represented, the people outside the city were not represented by the, by the elected officials, right? That is true. Now, not formally. That's what the Supreme Court said. They were subject to their police regulations, but they, they aren't your elected representatives. Whereas here they are. They are through the general election. Yeah, that's true. Okay. And if you are outside the Ward, you have no say on who gets picked, who gets nominated. Under the current system. That's right. It's by Ward. Let me ask you the, the, the question I asked the opposing counsel. What if they decided that the nomination would be done by the voters of Phoenix? Nobody in Tucson gets to vote on the nomination. We'll let Phoenix pick, the voters of Phoenix pick the nominees. That, that wouldn't, wouldn't work. Why not? Because you, you, part of the, a basic aspect of the. The two separate elections, right? The two separate elections in your view. But the people get to vote their own, to elect their own representatives. Everybody that's, I think a Kramer or an Evans situation where you'd say, well, we know you live within this district, but we're not going to let you vote in elections that do affect you. For instance, in Evans, you had a federal enclave. Well, that's what they're claiming. They're claiming you live in parts of Tucson and you don't get to vote on who gets put on the ballot. But you do get to vote for who represents you, which is the general election. Everybody votes. The same is true if the nomination happened in, by the people of Phoenix for the nomination, people in Tucson would still vote on the general election. The Phoenix voters nominate, and then the people of Tucson get to choose among the nominees, right? I think part of the answer there is that's, that's an irrational distinction we would be making as opposed to the rational distinction that we'd like to have our, each of our wards have a say. It would be irrational to say, well, Phoenix gets to pick Tucson's council. We'll just do it that way. Well, instead of Phoenix, it's a chunk of Tucson that don't get to participate. This is, that's the same, really. It's just that they happen to be in Tucson, but they don't get to have any input into the primary. But you say that the general election then cures that defect. Yes. The general election is the election of the representatives for the city. I'm sorry? What about classic? Classic. Classic was about primaries, as was all right, but I'll quote you what we said in our answering brief at page 27, middle of the page. They said in classic and in all right, that a primary is an election and we don't dispute that. But in Storer versus Brown, they said where the state chooses to utilize it, it's an integral part of the entire election process. But in classic, they said it's simply the first of two steps. And then in Storer versus Brown, that's at 313 U.S., 316 and 17. And in Storer, 40 years later or whatever it was, it's the initial stage in a two stage process. That's 415 U.S. at 735. So there's a nomination process. And the decision there is who's going to decide the party slate? Is it going to be all party voters in the entire city or is it going to be each ward gets to have a person on that slate? And then you have a general election, which is the actual representation election, and everybody gets to vote. So it's a matter of how the nomination process is being fixed. I didn't understand the question at all. I asked you about classic and you started talking about Storer. So why don't you try again? Classic. I didn't follow at all what you had to say. Classic is. Why don't you start with classic? Sure. Classic says there are steps in the election and they are different. They are not one election. Primary election is. But it also says that they are inextricably intertwined or something. What's the right effect on them? I think what I said, Your Honor, there may be something else in there, was that it's an integral part of the entire election process. That's the word. Yeah. And actually, that's actually Storer versus Brown, 415 U.S. at 735. Well, I'm sorry, if it's an integral part of the same process, why don't we have to treat the two of them the same as one unit, the primary and the general election? Because under Newbery and the whole set of cases that I gave you in Section 1 of our brief, the state has the power to designate different electoral districts for different elections. And that's what.  The question is, how do you designate different electoral districts for different elections? The question is whether or not, the question is who gets to vote. I mean, there's no doubt that you could pick and say you've got to have nominees from particular wards. And it's a requirement for nominees and no one disputes that. Right. The question is, can they be put on the general election ballot to represent the entire city when five, six of the city doesn't get to vote for them in the primary? To say you have to sort of look back to the primary because it's all part of one integrated process. And I don't think either Classic or Gravy-Sanders actually says that. They say you go election by election. No, they said that he wouldn't be here, would you? The question is, what can you tease out from the tea leaves? That's a fair statement. And you heard what the opposing counsel had to say, I just want to hear your best argument as to why he's not right. That states and localities control the nomination process. As you said, we don't have to have any primary. But then Classic would have come out the other way, right? I don't think so. I don't think the issue in Classic was ever about trying to say, are the primary and the general the same election? It was specifically dealing with a primary election and what comes into play for a primary. Do the same things come into play for a primary treated for itself as come in for a general election? Neither Classic nor Gray, in our view, can be read to say they're all one election. Newberry says they're not one election. It's just a way to get the party standard bear, as Judge Tallman pointed out. OK, thank you very much. Thank you very much. I'll be very brief, Your Honors. First, a correction. I'd said that the Department of Justice was notified of the case. It was not the Department of Justice. It was the Arizona Attorney General's office. Thoughts on two cases. Lopez-Torres. And you don't think we should? We've not raised a Voting Rights Act issue. And I was just wondering whether the United States has an interest. I guess since Section 5 doesn't apply anymore, they probably don't have any interest in those. They may have a lot of experience. That's correct. We certainly have no objection to notifying them. We don't believe it's necessary. Lopez-Torres was mentioned. Lopez-Torres is a freedom of association case. It's manifestly not an equal protection or one man, one vote case. It doesn't apply here. Newberry was mentioned. Newberry's been repudiated. Classic replaces it. The primary election and the general election, as we've heard, the primary is an integral part of the general election. I'll close, unless you have questions, with this observation. If the city is correct, if we can separate, if we can define a different geographic unit for the primary, separate from the general, there's nothing that would keep Arizona from saying Phoenix and North will nominate Senator McCain or his successor, and everything south of Phoenix will nominate Senator Flake and his successor. The same thing in California for, you know, pick a geographic point in the Senate, in a senatorial cycle. This is a radical principle. It's not consistent with the way we have thought of it. So what are you seeking? Do you want a system that will basically be similar to congressional districts where each ward elects its own individual council member? And then, yes, the council members serve for the betterment of the city, but they're only selected by wards? Is that the system you want? That would be the system we would choose. And that's a system Phoenix has. It's a system, I think, most... But Phoenix has flip-flopped back and forth, have they not? Phoenix used to have this system and abandoned it for reasons. We don't believe the city is constitutionally compelled to have the Phoenix system. You can have an at-large system, but your primaries have to be at-large as well. We are entitled, at a minimum, to a choice between those two, not the hybrid system. Our choice, our election is to have, our preference would be to have all ward only. But we don't pretend that that's a matter of constitutional compulsion. And you wouldn't be happy with a hybrid system where there were, let's say, four selected from wards and two citywide? So my understanding is that the case law does permit arrangements like that. But it's complicated. And the Voting Rights Act becomes more of an issue because those can be manufactured in a way that does keep political or racial minorities from having the influence to which they're entitled. And no one's proposed that in this case, to be fair. Like we said... Well, I mean, it sounds to me like under your theory, the only two systems that would be constitutional would be the one I just mentioned. And the second one would be if all the voters in the city voted on all of the people who were interested to run for city council in the primary. And then the general would essentially be a runoff between the highest vote getters from each of the wards, is that right? Our position is that you can, the Constitution allows all ward by ward elections from the primary all the way through the general or all at large elections, as long as there's not an intent to discriminate against minorities that's not alleged here. Or you could have the system that you mentioned, where you have some ward by ward elections, primary all the way through the general, and some number of at large seats. But that is more complicated. And you'd be OK if the city did away with primaries altogether and we just went back to a ward caucus system where people meet in somebody's living room and come up with some names to put on the general election ballot at which all voters get to vote for all candidates. When you ask whether we would be OK with it. Would that be constitutional? Assuming that you have one man, one vote process, you know, requirements met in the living room. There'd be no vote under my hypothetical, there'd only be one vote and that would be in the general election. There would be no voting in the caucuses beyond, I guess, a show of hands in somebody's living room as to who's going to be our nominee from the ward. We would not accept that proposal. How's that different from the party by party primary then? If the qualifications to attend and vote in a caucus were, let us say the system stays exactly as it is, except instead of having the primary election, everyone shows up to a living room and only people from ward one are allowed to show up to the living room caucus when you're nominating the person from ward one. We'd have the exact same constitutional complaint then. The qualifications to attend a caucus are themselves, attend and vote in a caucus, are themselves subject to one man, one vote requirements in our view. Of course, it's not been proposed here. There's no, there's no. Well, wait a second. How do you square that with our approval of party conventions? So party conventions, for example, when the state of Arizona has a convention to send delegates to the national party convention to elect a, nominate a president, they let people from the entire state attend that convention. There's equal representation at the convention, at the caucus. They don't exclude, let's say the city of Yuma from that convention. They can't because they're part of what's being represented at the nomination convention in Cleveland this year. So there are one man, one vote requirements on caucuses and conventions. It's not a free for all. But if, assuming those are satisfied, then certainly a caucus or convention is constitutionally permissible. Okay. Thank you.  Thank you. Case is held. Your sentence amended.
judges: Piersol, Kozinski, Tallman